UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSEPH VAN LOON *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF THE TREASURY *et al.*, <br><br> Defendants. | Civil Action No. 1:23-cv-312-RP |

DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE,
MOTION FOR STAY

Defendants oppose Plaintiffs' Motion for Entry of Judgment except with respect to the narrow issue before the Fifth Circuit relating to immutable smart contracts, and submit their own proposed judgment remanding to the Department of the Treasury and Office of Foreign Assets Control (OFAC) for further proceedings consistent with the Fifth Circuit's decision on appeal. *See* Pls.' Mot. for Entry of J., ECF No. 100; *see also Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 553 (5th Cir. 2024). In addition, the Department of Treasury has determined that it will remove Tornado Cash from the Specially Designated National and Blocked Persons (SDN) list. Accordingly, and in the alternative, Defendants request a stay of proceedings to provide time to delist Tornado Cash.

**1.** In late 2022, OFAC added the entity Tornado Cash to the SDN list because of "its role in laundering virtual currency for malicious cyber actors—for example, a North Korea-linked hacking group that used Tornado Cash to launder the proceeds of cybercrimes." *Van Loon*, 122 F.4th at 553. As a result of this designation, Tornado Cash's property and interests in property that are subject to the jurisdiction of the United States are blocked. *See* 31 C.F.R. § 578.201. Plaintiffs subsequently filed a lawsuit in this Court challenging the designation of Tornado Cash. *See* ECF No.

1

1. On August 17, 2023, this Court granted Defendants' motion for summary judgment, holding, among other things, that: (1) Tornado Cash constituted an entity pursuant to OFAC's regulations; (2) its smart contracts constituted property; and (3) Tornado Cash had an interest in its smart contracts. *See* ECF No. 94. Plaintiffs subsequently appealed this Court's decision to the Court of Appeals for the Fifth Circuit. *See* ECF No. 96.

On November 26, 2024, the Fifth Circuit issued a decision reversing this Court's judgment in favor of Defendants. *See* ECF No. 99. Although the court determined that OFAC "overstepped its congressionally defined authority," its holding was narrow: the court held "that Tornado Cash's *immutable* smart contracts . . . are not the 'property' of a foreign national or entity, meaning . . . they cannot be blocked under [the International Emergency Economic Powers Act (IEEPA)]." *Van Loon*, 122 F.4th at 554 (emphasis added). The Fifth Circuit expressly declined to decide "whether Tornado Cash qualifies as an 'entity' or whether it has an 'interest' in the immutable smart contracts." *Id.* at 571.

In holding that the immutable smart contracts are not "property" under IEEPA, the Fifth Circuit repeatedly distinguished them from the mutable smart contracts that also play a role in the Tornado Cash mixing service—such as the "mutable relayer-registry smart contract," *id.* at 559. For example, the court pointed to the fact that Tornado Cash does not profit directly from the immutable smart contracts. It noted that "[s]ome relayers and TORN token holders may receive fees from using the *mutable* relayer-registry smart contracts, but not from the immutable pool smart contracts." *Id.* at 567. The court also "[c]ompare[d] mutable and immutable smart contracts" in explaining why it concluded that "the immutable smart contracts are not contracts." *Id.* at 568. With respect to immutable smart contracts, the court reasoned, there is no person in control and therefore "no party with which to contract." *Id.* With respect to mutable smart contracts, in contrast, the "operator controlling the smart contract would *use* the mixer-smart contract to fulfill the contract." *Id.*

For these reasons, the Fifth Circuit's decision does not call into question OFAC's designation of Tornado Cash as an entity subject to sanctions under IEEPA or OFAC's decision to include that entity on the SDN list. The Court also did not hold that mutable smart contracts are not "property" under IEEPA. Nevertheless, Defendants accept the Fifth's Circuit's decision with regard to the immutable smart contracts and do not oppose entry of a narrow judgment as to those immutable smart contracts while the Department of Treasury prepares to delist Tornado Cash.

**2.** However, the appropriate remedy for such an entry of judgment is not injunctive or declaratory relief but would be for this Court to remand the matter to the Department of the Treasury and OFAC for proceedings consistent with the Fifth Circuit's decision as to the immutable smart contracts. On remand, OFAC will delist Tornado Cash. This remedy provides all the relief that Plaintiffs are entitled to.

Although remand with vacatur is the "default" remedy for success on a claim under the Administrative Procedure Act (APA), it is not automatic nor warranted in every case.[1] *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded on other grounds*, 597 U.S. 785 (2022). In this Circuit, "[t]wo factors determine whether vacatur is appropriate: '(1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the vacatur.'" *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022). Both factors strongly favor Defendants here. First, the Fifth Circuit did not find "deficiencies" with OFAC's designation as a whole. *Id.* As explained, it found only that the immutable smart contracts are not "property," as that term is statutorily defined, which means

---

[1] Notwithstanding Fifth Circuit precedent concluding otherwise, Defendants respectfully maintain that vacatur is not an available remedy under the APA. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring) (Congress did not "mean[] to overthrow the bedrock practice of case-by-case judgments with respect to the parties in each case" by adopting the unremarkable "set aside" language in section 706 (internal quotation marks omitted)).

that transactions are not prohibited based on involvement of Tornado Cash immutable smart contracts in the transaction, even if Tornado Cash is an "entity" which OFAC could lawfully designate. That narrow decision does not reach the merits of the designation of Tornado Cash itself.

Second, vacating the designation of Tornado Cash in its entirety could have significantly "disruptive consequences" for national security and law enforcement. *Texas*, 50 F.4th at 529. As the Fifth Circuit observed,

> mixers are . . . go-to tool[s] for cybercriminals seeking to launder stolen cryptocurrency. Nearly a quarter of funds sent to mixers in 2022 were tied to money laundering efforts. Most relevant to this case, North Korea, through one of its cybercriminal organizations known as the Lazarus Group, has hacked and stolen just shy of one billion dollars' worth of cryptocurrency. And all of that dirty money needed to be laundered before it could be cashed out for traditional (and far more liquid) fiat currencies. So North Korean hackers turned to mixers. More than 65 percent of North Korea's dirty crypto went through mixers in 2021, up from 42 percent in 2020 and 21 percent in 2019. And how does North Korea use this laundered money? To fund its weapons of mass destruction and ballistic missile programs.

*Id.* at 559–60 (internal quotation marks omitted). Vacating the designation could impair the government's ability to disrupt those activities. Particularly in light of these national security concerns, there is simply no basis for vacating the Tornado Cash designation under the Fifth Circuit's decision, which did not address the designation itself, and the decision to delist Tornado Cash should be left to the agency on remand. *Cf. Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (emphasizing the "unique nature" of cases challenging designations under IEEPA, "at the intersection of national security, foreign policy, and administrative law," and where "the high degree of judicial deference to the decision to designate an entity . . . '"is a necessary concomitant of the foreign affairs power'" (quoting *Humanitarian Law Project v. Reno,* 205 F.3d 1130, 1137 (9th Cir.2000)).

Even if a narrow entry of judgment is appropriate, the permanent injunction Plaintiffs seek is not the right remedy. "Success on an APA claim does not automatically entitle the prevailing party to a permanent injunction." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C.

Cir. 2020). Rather, a "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief"—namely, "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Plaintiffs have not attempted to make the requisite showing here.

   3.   In the alternative, Defendants respectfully request a stay of the litigation to allow the Department of Treasury time to remove Tornado Cash from the SDN list.[2] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay will conserve party and judicial resources and promote the efficient and orderly disposition of this case by ensuring that the litigation proceeds with the informed views of current Department of Treasury and Office of Foreign Assets Control leadership, and in the light of recent policy developments with respect to cryptocurrency.

For the foregoing reasons, Defendants respectfully request that the Court enter an amended final judgment on count 1 in favor of Plaintiffs and on counts 2 and 3 in favor of Defendants and remand to the Department of the Treasury and OFAC for further proceedings consistent with the Fifth Circuit's decision. In the alternative, Defendants request a stay of the proceedings.

---

[2] Defendants acknowledge that in response to their Motion for Extension of Time to Respond, ECF No. 102, the Court noted that further extensions of the briefing schedule would not be granted. Nevertheless, Defendants respectfully suggest that a stay may conserve judicial resources, and in any event, a stay is being proposed only in the alternative.

5

March 17, 2025                                    Respectfully submitted,

                                              YAAKOV M. ROTH
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director

/s/   *Kevin K. Bell*
KEVIN K. BELL
GA Bar No. 967210
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L St. NW
Washington, D.C. 20005
(202) 205-8613
Kevin.K.Bell@usdoj.gov

*Counsel for Defendants*